# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re:<br><br>KIMMY R. JACKSON,<br><br>Debtor | )<br>)<br>)<br>)<br>)<br>)<br>) | Chapter 13<br>Case No. 10-11716-MSH |
| KIMMY R. JACKSON,<br><br>Plaintiff<br><br>v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES,<br><br>Defendant | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Adversary Proceeding<br>No. 18-01162-MSH |

## MEMORANDUM OF DECISION
## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The defendant in this adversary proceeding, Rushmore Loan Management Services, has moved for summary judgment on all three counts of the complaint filed by Kimmy R. Jackson, the debtor in the main case and the plaintiff here. After a hearing on the motion and consideration of the parties' oral and written submissions, I will, for the reasons explained below, grant the defendant's motion and enter judgment in favor of Rushmore on all counts of the complaint.

1

**Facts**

The following facts are taken from the undisputed allegations in the complaint and the statement of facts and affidavit in support of Rushmore's motion for summary judgment.[1] Ms. Jackson, who owns condominium unit 316 at 700 N. Wellman Avenue in North Chelmsford, Massachusetts, borrowed money and granted her lender a first mortgage on her unit sometime prior to 2018. Rushmore became the servicer of her mortgage loan around May 1, 2018. Prior to that time, Capital One had been Ms. Jackson's mortgage loan servicer. While Capital One was the loan servicer, Ms. Jackson submitted a loan modification application with respect to her loan. Capital One responded to the application by letter dated January 11, 2018, requesting more information. The letter stated: "Please send us the requested information by February 10, 2018, or your request for assistance will be closed for incompleteness." In her unverified complaint here, Ms. Jackson alleges that she submitted the requested information and never received further correspondence from Capital One. Capital One's records, apparently transferred to Rushmore when it became the new servicer, reflected that Jackson in fact did not provide all the requested documents, and on April 10, 2018, Capital One determined that due to her incomplete application, no loss mitigation option was available to Ms. Jackson.

After Rushmore became the servicer of Ms. Jackson's mortgage loan, it sent her three letters along with forms and applications advising Ms. Jackson of Rushmore's borrower assistance and loss mitigation options. The letters were sent on May 5, 9, and 15, 2018, respectively.

---

[1] As the plaintiff failed to timely file and serve a statement as to those material facts, if any, which she believed were in dispute and which created a genuine issue to be tried, Rushmore's stated facts are deemed admitted for purposes of its motion for summary judgment. *See* MLBR 7056-1 (adopting D. Mass. L.R. 56.1).

Ms. Jackson did not respond to any of Rushmore's letters offering assistance. Instead, on May 26, 2018, Ms. Jackson's attorney sent a letter to Rushmore asking the following questions:

1. Who was the prior servicer?
2. When was servicing transferred?
3. What is the current principal balance?
4. What is the amount of the current monthly payment, itemized into principal, interest and escrow (if applicable)?
5. Is this loan owned by any governmental agency such as HUD, FNMA or FHLMC?
6. What loan modification options does Ms. Jackson have?

Rushmore acknowledged receipt of the letter on June 7, 2018, and followed up by mailing Ms. Jackson on June 15, 2018, her "customer account activity statement" containing her loan payment history. On October 24, 2018, slightly more than five months after becoming her mortgage servicer, Rushmore notified Ms. Jackson that the servicing of her mortgage was being transferred to another servicer. The last day Rushmore serviced Ms. Jackson's loan was November 12, 2018.

Ms. Jackson, who filed a petition for relief under chapter 7 of the Bankruptcy Code in this Court in February 2010 and converted her case to one under chapter 13 in January 2013, initiated this adversary proceeding in October of 2018. In her complaint, she asserted claims against Rushmore for violations of the federal Real Estate Settlement Procedures Act (RESPA) (count I), violations of various federal regulations and state laws (count II), and breaches of contract (count III).

**Positions of the Parties**

Ms. Jackson argues that Rushmore had a duty to respond to each of the questions in her May 26th letter and failed to do so. Furthermore, she claims that Capital One never completed the disposition of her loan modification application and that Rushmore, as its successor servicer,

3

had a duty to do so and failed to carry out that duty. This conduct, Ms. Jackson asserts, gives rise to the violations and breaches alleged in the three counts of her complaint.

Rushmore responds that Capital One closed Ms. Jackson's loan modification application due to her failure to submit all the documents requested by Capital One and thus there was no active loan modification process in existence at the time Rushmore became Ms. Jackson's loan servicer. While Rushmore concedes that it did owe duties to Ms. Jackson under federal and state law, it insists that it complied with all its duties. What's more, Rushmore maintains that even if it had failed to comply, Ms. Jackson suffered no damage as a result and, therefore, cannot prevail on her claims in any event. Finally, Rushmore asserts there were no contracts under which Ms. Jackson would have a right to bring a claim against it for a breach.

**Summary Judgment Standard**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also* Fed. R. Bankr. P. 7056 (applying Rule 56 to adversary proceedings). A dispute is "genuine" when "supported by such evidence that 'a reasonable jury, drawing favorable inferences,' could resolve it in favor of the nonmoving party." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (quoting *Smith v. F.W. Morse & Co.*, 76 F.3d 413, 428 (1st Cir. 1996)). A disputed fact is "material" if its resolution in the nonmovant's favor could affect the suit's outcome upon applying applicable law. *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir. 1995). The moving party "bears the initial responsibility of informing the [trial] court of the basis for its motion and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*

4

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to "'present definite, competent evidence to rebut the motion.'" *Pagano v. Frank*, 983 F.2d 343, 347 (1st Cir. 1993) (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991)).

## Discussion

At the hearing on Rushmore's motion for summary judgment, Ms. Jackson's attorney incorrectly argued that Rushmore bore the burden of proof in the summary judgment process.[2] It is a settled rule, however, that "[o]n issues where the nonmovant bears the ultimate burden of proof at trial, he may not defeat a motion for summary judgment by relying upon evidence that is 'merely colorable' or 'not significantly probative.'" *Pagano*, 983 F.2d at 347 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). "As to issues on which the nonmovant has the burden of proof, the movant need do no more than aver 'an absence of evidence to support the nonmoving party's case.'" *Mottolo v. Fireman's Fund Ins. Co.*, 43 F.3d 723, 725 (1st Cir. 1995) (quoting *Celotex*, 477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B) (permitting moving party to show that fact cannot be genuinely disputed by "showing . . . that an adverse party cannot produce admissible evidence to support the fact").

**Count I**

Count I of the complaint alleges that Rushmore violated RESPA by failing to adequately respond to Ms. Jackson's May 26, 2018 letter. RESPA is a consumer protection statute that, among other things, requires the servicer of a federally related mortgage loan to respond to certain borrower requests for information relating to the servicing of such a loan if the request is

---

[2] This may explain why Ms. Jackson failed to conduct discovery in this proceeding or to timely submit a response to Rushmore's statement of material facts.

5

a "qualified written request" (QWR), as defined in the statute, 12 U.S.C. § 2605(e)(1).[3] *See also O'Connor v. Nantucket Bank*, 992 F. Supp. 2d 24, 34 (D. Mass. 2014) (discussing RESPA requirements). A QWR is a written correspondence that "enables the servicer to identify[] the name and account of the borrower" and presents the reasons for the borrower's belief "that the account is in error" or otherwise requests information and "provides sufficient detail to the servicer regarding [the] information sought." 12 U.S.C. § 2605(e)(1)(B). RESPA defines a "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)." *Id.* § 2605(i)(2). A servicer who receives a QWR must acknowledge receipt of the QWR within five business days and respond to the QWR "with a written explanation or clarification" within thirty business days. *Id.* § 2605(e). The servicer's response must inform the borrower of any appropriate corrections to her account or state "the reasons for which the servicer believes the account of the borrower is correct" after investigating the issue. *Id.* § 2605(e)(2). Alternatively, the response may explain "why the information requested is unavailable or cannot be obtained by the servicer" after an investigation. *Id.*

To prevail on her count I claim, Ms. Jackson must show: (1) that Rushmore failed to comply with RESPA's QWR rules; and (2) that she suffered actual damages as a consequence of Rushmore's failure. *See Gaydos v. Bank of America, N.A.*, No. 1:17-cv-10246-ADB, 2019 WL

---

[3] Ms. Jackson asserts, and Rushmore does not dispute, that Rushmore is a "servicer" of a "federally related mortgage loan" as defined by RESPA. *See* 12 U.S.C. §§ 2605(i)(2), 2602(1). To qualify as a "federally related mortgage loan" the loan must be "secured by a first or subordinate lien on residential real property" and have some relation to a federal agency or certain mortgage associations, or it must have been made by a "creditor," as defined in the Truth in Lending Act, § 1602(f) of Title 15. 12 U.S.C. § 2602(1).

404031, at *4 (D. Mass. Jan. 30, 2019). Here I need not address the first requirement because Ms. Jackson fails the second.

To withstand a defendant's motion for summary judgment involving a claimed violation of RESPA such as the one here, a plaintiff must demonstrate "a specific pecuniary loss and identify how the purported RESPA violation caused that loss." *See id.* at *4 (citing *Foregger v. Residential Credit Sols., Inc.*, No. 12-11914-FDS, 2013 WL 6388665, at *4 (D. Mass. Dec. 5, 2013)); *Bulmer v. MidFirst Bank, FSA*, 59 F. Supp. 3d 271, 279 (D. Mass. 2014). Liability for statutory damages, which can include damages due to "a pattern or practice of noncompliance with the requirements" of RESPA, specifically requires that the plaintiff sustain an actual injury. *See* 12 U.S.C. §2605(f)(1); *Diedrich v. Ocwen Loan Servicing*, 839 F.3d 583, 589 (7th Cir. 2016). It is the plaintiff's burden to establish that a claimed injury was proximately caused by a violation of RESPA. *Holland v. EMC Mortg. Corp. (In re Holland)*, Case No. 04-18099-JNF, Adv. No. 06-1418, 2008 WL 4809493, at *9 (Bankr. D. Mass. Oct. 30, 2008).

In her unverified complaint, Ms. Jackson asserts vague and speculative damages related to Rushmore's conduct. These include "expenses for attorney fees relating to the inquires, postage, time lost from work, damage to her credit rating, the possibility of fees and costs improperly or unreasonably charged to her account by Rushmore, and emotional distress in the form of unreasonable [sic] fear of foreclosure." Ms. Jackson did nothing to clarify her damage claim in response to Rushmore's motion for summary judgment. She did not file any affidavits or other documents to support the existence or extent of these alleged injuries.

"'To survive summary judgment, the nonmoving party must show evidence sufficient to establish every element that is essential to [her] claim and for which [she] will bear the burden of proof at trial.'" *Diedrich*, 839 F.3d at 591 (quoting *Life Plans, Inc. v. Sec. Life of Denver Ins.*

*Co.*, 800 F.3d 343, 349 (7th Cir. 2015)). This means that Ms. Jackson had the burden to "come forward with evidence sufficient to support an award actual of damages to pursue [her] RESPA claim[]." *Id.* Based on the record, there is no evidence that costs were improperly or unreasonably charged to her account. Ms. Jackson did not file an affidavit containing evidence of time lost from work, damage to her credit rating, or emotional distress, let alone a causal connection between any of these injuries and Rushmore's QWR response (assuming without deciding that it was inadequate). *See Gaydos*, 2019 WL 404031, at *4 ("Although Plaintiff makes a general allegation that he suffered lost wages, attorney's fees, other expenses, and emotional distress related to the fear of losing his home as a result of the RESPA violations, that allegation lacks the requisite specificity and fails to assert a causal connection to an identified RESPA violation." (citation omitted)); *Hopson v. Chase Home Fin. LLC*, 14 F. Supp. 3d 774, 788 (S.D. Miss. 2014) ("Plaintiffs allege generally that they have sustained a reduction in property value, harm to their credit scores, the threat of foreclosure and mental and emotional distress damages. Yet there is nothing in the complaint to link any of these alleged damages to Chase's alleged violation of RESPA.").

Ms. Jackson alleges damages for attorney's fees relating to the preparation of her inquiry and the postage for sending it. But preparation costs, "are not actual damages under RESPA because RESPA requires the damages to flow as a result of the violation." *Giordano v. MGC Mortg., Inc.*, 160 F. Supp. 3d 778, 782 (D.N.J. 2016) (collecting cases). The language of the statue allowing recovery for "any actual damages to the borrower *as a result* of the failure," precludes the recovery for costs related to preparing the initial QWR. 12 U.S.C. § 2605(f)(1)(A) (emphasis added). Ms. Jackson would have borne the cost of preparing the initial QWR regardless of whether Rushmore had responded properly. *See Giordano*, 160 F. Supp. 3d at 782

8

("Expenses that would be incurred regardless of a violation do not occur 'as a result' of the violation."). *But see In re Bryce*, 491 B.R. 157, 181 (Bankr. W.D. Wash. 2013) (finding "[t]he actual damages for the RESPA violations are the amount paid by the Plaintiffs to [their attorney] to prepare the Qualified Written Request, or $180").

Furthermore, attorney's fees related to litigating a case do not constitute actual damages under RESPA. They are separately authorized under § 2605(f)(3) which provides that "in the case of any successful action under this section, the costs of the action, together with any *attorneys fees incurred* in connection with such action as the court may determine to be reasonable under the circumstances" shall be awarded in addition to other damages. 12 U.S.C. § 2605(f)(3) (emphasis added); *see also Moore v. Wells Fargo Bank, N.A.*, 908 F.3d 1050, 1060 (7th Cir. 2018) (concluding that including attorney's fees in actual damages "would render § 2605(f)(3) superfluous"). Thus, Ms. Jackson's eligibility to collect attorney's fees is predicated upon her succeeding in her claims against Rushmore, which for the reasons previously noted will not occur. Ms. Jackson's count I claims cannot withstand Rushmore's motion for summary judgment.

**Count II**

In count II of her complaint, Ms. Jackson alleges that Rushmore violated both federal regulations promulgated under RESPA and Massachusetts law.

The Consumer Financial Protection Bureau (CFPB) promulgated "Regulation X" pursuant to RESPA.[4] 12 C.F.R. §§ 1024.1-1024.41. In this regulation, the CFPB laid out procedures a servicer must follow after receiving an application by a borrower for a loan modification or loss mitigation. *See* 12 C.F.R. § 1024.41. In her complaint, Ms. Jackson asserts without detail that Rushmore did not comply fully with Regulation X. Providing more context in her opposition to Rushmore's motion for summary judgment, albeit in unsworn argument, she alleges that Rushmore had a duty to complete the processing of her loan modification application to Capital One when it succeeded Capital One as her loan servicer and failed to do so. *See* 12 C.F.R. § 1024.41(k).

Rushmore submitted unrebutted factual material establishing that Capital One had completed its disposition of Ms. Jackson's loan modification application by determining that she was not eligible due to her failure to submit all the necessary documentation requested. As discussed with regard to count I, however, it isn't necessary to delve into Rushmore's conduct regarding its predecessor's handling of Ms. Jackson's loan modification application because Ms. Jackson has not carried her burden on claiming damages. Subsection (a) of § 1024.41 of Regulation X states: "A borrower may enforce the provisions of this section pursuant to section

---

[4] During the first year of the Trump Administration in 2017, CFPB acting director and vocal critic of the agency, Mick Mulvaney, changed the Bureau's name to the Bureau of Consumer Financial Protection. But like the spectacularly unsuccessful attempt to re-brand Coca Cola "New Coke" back in the 1980s, the new name simply would not catch on. Finally, a year after the name change, Mulvaney's successor, Kathy Kraninger, citing costs, operational challenges and the effect on the stakeholders, dropped the rebranding effort. While its legal name remains the Bureau of Consumer Financial Protection, the agency decided to continue to call itself by the name we all know, the Consumer Financial Protection Bureau. Renae Merle, *The CFPB tried to change its name. Here's why it's giving up*, Wash. Post (Dec. 19, 2018, 1:47 PM), https://www.washingtonpost.com/business/2018/12/19/cfpb-tried-change-its-name-heres-why-its-giving-up/.

6(f) of RESPA (12 U.S.C. [§] 2605(f))." 12 CFR § 1024.41(a). In other words, the same two-part test outlined above for making out a claim for a RESPA violation is required to establish a claim for violating Regulation X. Since the second part of that test is proximate injury and Ms. Jackson has failed to present a specific, causally connected claim for any injury, her cause of action for Rushmore's violating Regulation X can no more withstand a motion for summary judgment than can her RESPA claim.

Within the same count, Ms. Jackson has alleged that Rushmore violated sections 35B and 35C of chapter 244 of the Massachusetts General Laws.[5] Pursuant to § 35B(b), "[a] creditor shall not cause publication of notice of a foreclosure sale . . . upon certain mortgage loans unless it has first taken reasonable steps and made a good faith effort to avoid foreclosure." Mass. Gen. Laws ch. 244, § 35B(b). Section 35B subsection (c) requires, "for certain mortgage loans, the creditor shall send notice, concurrently with the notice required by subsection (g) of section 35A, of the borrower's rights to pursue a modified mortgage loan." Mass. Gen. Laws ch. 244, § 35B(c). The notice required by § 35A(g) is the notice that a creditor intends to accelerate payment of the unpaid balance of a mortgage loan after a triggering event, such as a default. Mass. Gen. Laws ch. 244, § 35A(a).[6]

In its motion for summary judgment, Rushmore makes two arguments for why it cannot be held liable under count II of the complaint for violations of the Massachusetts statutes. First, Rushmore points out that it never published a notice of foreclosure sale or sent Ms. Jackson an

---

[5] I assume Ms. Jackson is arguing that Rushmore violated both sections 35B and 35C, although her complaint does no more than cite the sections.

[6] Section 35A of Chapter 244 was amended, effective in January 2016, such that the contents of subsection (g) are now reflected in subsection (a). *See Bank of New York Mellon v. Morin*, 136 N.E.3d 396, 404 n.5 (Mass. App. Ct. 2019) (citing 2010 Mass. Acts 1102, 1107-1112).

11

acceleration notice and thus could not have violated § 35B. Second, Rushmore notes that it could not have taken the steps required in § 35B(b) because Ms. Jackson never submitted the information it would need in order to do so. Ms. Jackson never responded to any of the three separate communications from Rushmore in May 2018 informing her about the availability of loan modification or borrower assistance services.

In opposing Rushmore's motion for summary judgment, Ms. Jackson asserts that Rushmore's argument that it never undertook foreclosure activity "is irrelevant because Rushmore does not point to anything in the statute that makes the [loan] modification provision applicable only in the context of an active foreclosure." Ms. Jackson clearly ignores the plain language of the statute: "a creditor *shall not cause publication of notice of a foreclosure sale . . . unless* it has first taken reasonable steps and made a good faith effort to avoid foreclosure," Mass. Gen. Laws ch. 244, § 35B(b) (emphasis added). If there is no publication of such notice, logically there can be no violation of this subsection. This statute imposes certain duties on creditors if they wish to undertake certain actions, the duties are not blanket requirements applicable to all mortgage holders. *Cf. Bank of New York Mellon v. Morin*, 136 N.E.3d 396, 404 (Mass. App. Ct. 2019) (discussing events that trigger duties and obligations under § 35B).

Ms. Jackson has not alleged, never mind provided evidentiary quality material to establish, that Rushmore published a notice of a foreclosure sale or in any way advanced the foreclosure process. Therefore, Rushmore could not have violated § 35B(b) of chapter 244.

With respect to § 35B(c), that section only comes into play if the servicer sends notice of the lender's intent to accelerate the debt upon a default. Rushmore maintains and Ms. Jackson has not disputed that Rushmore never sent such a notice. Accordingly, there cannot have been a violation of § 35B(c).

It is unclear whether Ms. Jackson is also arguing Rushmore violated § 35C of chapter 244, as in both her complaint and opposition to summary judgment she failed to provide specifics as to which sections of chapter 244 Rushmore allegedly violated. Subsection (b) of § 35C provides that "[a] creditor shall not cause publication of notice of foreclosure" if it knows that the mortgagee is not the note holder or the agent of the note holder. Mass. Gen. Laws ch. 244, § 35C(b). Subsection (c) provides that a creditor violates chapter 244 if it imposes "the cost of correcting, curing, or confirming documentation" on a third party if the curative actions had to be "taken because a foreclosure was commenced without the creditor's possession of a valid, written, signed and dated assignment." Mass. Gen. Laws. ch. 244, § 35C(c). Subsection (d) prohibits a creditor from making false statements to a court related to foreclosure or compliance with chapter 244. Mass. Gen. Laws. ch. 244, § 35C(d). Lastly, subsections (e) and (f) provide that a borrower should not be charged "for goods not rendered or services not performed in connection with a foreclosure" and that individuals shall only accept fees for services actually performed. Mass. Gen. Laws. ch. 244, § 35C(e)-(f).

To the extent that § 35C required Rushmore to have initiated a foreclosure or loan acceleration as a precondition to the statute's applicability, Rushmore did not violate that section as neither action was attempted or threatened. To the extent that § 35C does not require any foreclosure or acceleration action, there has been no evidentiary quality showing on the record here to support a violation or that Rushmore caused the type of harm this statute seeks to prevent.

Rushmore is entitled to summary judgment in its favor on count II of Ms. Jackson's complaint.

**Count III**

In count III of her complaint, Ms. Jackson brings a breach of contract claim against Rushmore. Although not clearly pleaded, it seems that Ms. Jackson is arguing that Rushmore's failure to comply with RESPA and failure to act in good faith or deal fairly with her constituted a breach of its duty under Ms. Jackson's promissory note and mortgage. Even though Rushmore was not a party to these contracts, Ms. Jackson seeks to hold it liable because Rushmore was the noteholder/mortgagee's agent.

Under Massachusetts law, to succeed on a claim for breach of contract, a plaintiff must prove that a valid contract existed between the parties, that the plaintiff was able to perform under the contract, that the defendant breached its duties, and that the breach caused the plaintiff damage. *See Bose Corp. v. Ejaz*, 732 F.3d 17, 21 (1st Cir. 2013) (citing *Singarella v. City of Boston*, 173 N.E.2d 290, 291 (Mass. 1961)). Neither party can be a stranger to the contract. Put another way, apart from a few narrow exceptions, there must be privity between the plaintiff and the alleged breaching party. *See Mellen v. Whipple*, 67 Mass. 317, 321 (1854) ("The rule is sometimes thus expressed: there must be a privity of contract between the plaintiff and defendant, in order to render the defendant liable to an action, by the plaintiff on the contract.").

Ms. Jackson asserts that as agent for her lender, Rushmore can be sued for breach of the note and mortgage. In support, she marshals a single legal authority—*CWCapital Asset Mgmt., LLC v. Chicago Props., LLC*, 610 F.3d 497 (7th Cir. 2010). In that decision, the court considered whether a servicer had standing to sue, in its own name, a borrower to enforce a note and collect payments on behalf of the lender. This is a question entirely different from the one here which boils down to whether a borrower may sue a servicer for breaches of the note and mortgage. *CWCapital* offers Ms. Jackson no assistance.

14

Agency law developed to provide innocent third parties an avenue to hold principals accountable for the harm caused by their agents. *Merrimack Coll. v. KPMG LLP*, 108 N.E.3d 430, 438 (Mass. 2018). Thus, a principal may be held liable for breaches of a contract which his agent enters into with a third party. *Id.* Ms. Jackson offers no legal authority, however, to support her turning agency law on its head by attempting to hold an agent (Rushmore) liable for breaches of a contract between the agent's principal (the lender) and a borrower (Ms. Jackson).

Courts have consistently held that there is no contractual privity between a borrower and a loan servicer with respect to a note and mortgage, and, therefore, the borrower cannot prevail against the servicer on a breach of contract claim. *See Mazzei v. Money Store*, 308 F.R.D. 92, 109 (S.D.N.Y. 2015) ("A significant majority of courts have concluded that loan servicers are not in privity of contract with mortgagors where the servicers did not sign a contract with the mortgagors or expressly assume liability."); *Edwards v. Ocwen Loan Servicing, LLC,* 24 F. Supp. 3d 21, 28 (D.D.C. 2014) ("Judges around the country . . . have held that a loan servicer, as a lender's agent, has no contractual relationship or privity with the borrower and therefore cannot be sued for breach of contract."). If, however, the borrower can show that a lender validly assigned some or all of its contractual obligations to the loan servicer, the borrower can sue the servicer if it violates the terms of that part of the mortgage contract. *See In re Ocwen Loan Servicing, LLC Mortg. Servicing Litig.*, 491 F.3d 638, 645 (7th Cir. 2007). As Ms. Jackson has not alleged, never mind offered any supporting evidence, that Ms. Jackson's lender assigned any of its contractual obligations to Rushmore, she has no privity with Rushmore as to her note and mortgage and, therefore, cannot prevail on her breach of contract claim. And again, the record does not contain any evidence that Ms. Jackson suffered damages based on any alleged breaches.

15

As there is no contract between the parties, and no damages shown, I will grant summary judgment in favor of Rushmore as to count III of the complaint.

## Conclusion

Defendant's motion for summary judgment will be granted as to all counts. A separate order consistent with this memorandum shall enter.

Dated: November 2, 2020

By the Court,

Melvin S. Hoffman
U.S. Bankruptcy Judge

Counsel Appearing:	David G. Baker, Esq.
Boston, MA
for the plaintiff Kimmy R. Jackson

Jennifer J. Normand, Esq.
David M. Rosen, Esq.
Rosen Legal, LLC
Waltham, MA
for the defendant Rushmore Loan Management Services, LLC

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | | |
|---|---|---|
| In re:<br><br>KIMMY R. JACKSON,<br><br>Debtor | ) ) ) ) ) ) ) | Chapter 13<br>Case No. 10-11716-MSH |
| KIMMY R. JACKSON,<br><br>Plaintiff<br><br>v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES,<br><br>Defendant | ) ) ) ) ) ) ) ) ) ) ) ) ) | Adversary Proceeding<br>No. 18-01162-MSH |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

In accordance with the memorandum of decision issued today, the defendant Rushmore Loan Management Services' motion for summary judgment (ECF No. 33) is granted as to all counts.

Dated: November 2, 2020

By the Court,

_Melvin S. Hoffman_
Melvin S. Hoffman
U.S. Bankruptcy Judge

1